UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ x
UNITED STATES OF AMERICA        :
                                :
                                :
v.                              :
                                :   Criminal No. 3:21-cv-88 (AWT)
                                :
LEONARDO HECTOR ROSADO          :
                                :
                                :
                                :
------------------------------ x
```

<u>**RULING ON DEFENDANT'S PRETRIAL MOTIONS**</u>

Defendant Leonardo Hector Rosado is charged in a three-count Superseding Indictment. Count One charges him with Possession with Intent to Distribute and Distribution of 400 Grams or More of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi). Count Two charges him with Possession with Intent to Distribute and Distribution of 500 Grams or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii). Count Three charges him with Possession with Intent to Distribute and Distribution of 400 Grams of More of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi).

The defendant, proceeding <u>pro</u> <u>se</u>, has filed eight pretrial motions. For the reasons set forth below, each of those motions is being denied.

-1-

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2021, a grand jury returned a two-count
Indictment. In Count One, the defendant was charged with
Possession with Intent to Distribute and Distribution of 500
Grams of More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1)
and 841(b)(1)(B)(ii). In Count Two, the defendant was charged
with Possession with Intent to Distribute and Distribution of
100 Grams of More of Heroin in violation of 21 U.S.C. §§
841(a)(1) and 841(b)(1)(B)(i). On June 9, 2021, the defendant
was arraigned and entered not guilty pleas on both counts of the
Indictment.

Also on June 9, 2021, the government filed a Second
Offender Information pursuant to 21 U.S.C. § 851 based on the
defendant's federal drug conviction on December 6, 2010. See ECF
No. 15. In that case, Rosado had been sentenced to 121 months of
imprisonment followed by a five-year term of supervised release.
On January 13, 2021 the court had approved early termination of
Rosado's term of supervised release.

On September 27, 2021, the government moved for a hearing
pursuant to Missouri v. Frye, 566 U.S. 134 (2012). Shortly
thereafter, Rosado retained new counsel and his appointed
attorney moved to withdraw from the case.

On May 17, 2022, a Frye hearing was held.

On May 24, 2022, Rosado's counsel at the time informed the

-2-

government that the defendant was rejecting the plea offer, which had been left pending.

On May 26, 2022, the defendant filed a motion to proceed pro se, and, subsequently, his retained counsel moved to withdraw.

On June 10, 2022, a hearing was held to address the defendant's motion to proceed pro se. The court took the defendant's motion under advisement and gave him an additional 30 days to consider whether he would like to represent himself.

On June 14, 2022, the Superseding Indictment was returned. Count One was a new charge. Count Two was the charge that had been set forth in Count One of the Indictment. Count Three corrected the charge that was originally set forth in Count Two of the Indictment, to reflect that the controlled substance was 400 grams or more of fentanyl, not 100 grams or more of heroin, and to reflect that the penalty provision was § 804(b)(1)(A)(vi).

On July 14, 2022, the defendant was arraigned on the Superseding Indictment.

Also on July 14, 2022, the court granted the defendant's motion for self-representation and appointed standby counsel.

On August 22, 2022, the parties appeared in court for a second Frye hearing, at which time the defendant again rejected the government's plea offer.

On August 26, 2022, the government filed a Second Offender Information pursuant to 21 U.S.C. § 851 regarding the Superseding Indictment.

The defendant does not appear to contest the facts set forth in the Affidavit in Support of Issuance of a Criminal Complaint (ECF No. 2) or in the Affidavit in Support of Application for Search Warrant (3:21-mj-00444-RMS-1 ECF No. 10-1). Although the defendant submitted an affidavit in which he states that he was arrested without a warrant, that fact is not contested by the government. Thus, there are no "disputed issues of fact that would justify an evidentiary hearing." United States v. Dear, 2020WL7078728 at *7 (quoting United States v. Diaz, 303 F.Supp. 2d 84, 93 (D. Conn. 2004) (citing United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969)).

**II.  Motion to Dismiss Section 851 Information (ECF No. 85)**

Section 851(a)(1) of Title 21 of United States Code provides in relevant part that:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1). Rosado moves for a ruling that the government's Section 851 information is "not warranted due to

gross disparity in imposing this enhancement." Def's. Pretrial
Mot. (ECF No. 85) at 1 (original in all caps). He asserts that
there is a "stunningly arbitrary application by the Department
of Justice (DOJ) of § 851 drug enhancements." Id. at 2. He
references a Department of Justice Policy Memorandum issued in
August 2013 by then Attorney General Eric Holder, "Memorandum to
the United States Attorneys and Assistant Attorney General for
the Criminal Division" (the "Holder Memo"), and contends that
based on the factors set forth in that memorandum, it was not
appropriate to file the Section 851 information in his case.

"It is well established that the decision as to what
federal charges to bring against any given suspect is within the
province of the Executive Branch of the government." United
States v. Sanchez, 517 F.3d 651, 670 (2d Cir. 2008). In United
States v. LaBonte, the Supreme Court explained, with respect to
the Section 851 information:

> As we understand it, this argument posits that if the
> Government provides notice under § 851(a)(1) to one
> defendant, but not to another, the resulting difference
> in the maximum possible term is an 'unwarranted
> disparity.' Insofar as prosecutors, as a practical
> matter, may be able to determine whether a particular
> defendant will be subject to the enhanced statutory
> maximum, any such discretion would be similar to the
> discretion a prosecutor exercises when he decides what,
> if any, charges to bring against a criminal suspect.
> Such discretion is an integral feature of the criminal
> justice system, and is appropriate so long as it is not
> based upon improper factors.

LaBonte, 520 U.S. 751, 761-62 (1997).

The defendant references discussion in <u>United States v. Kupa</u> that refers to the government's use of Section 851 informations "for the indefensible purposes of coercing guilty pleas and punishing those who go to trial." <u>Kupa</u>, 976 F. Supp 2d 417, 421 (E.D.N.Y. 2013). However, the facts alleged here do not support any claim of coercion. The government filed the Second Offender Information under Section 851 on June 9, 2021, the same day on which the defendant was arraigned. Then after the defendant was arraigned on the Superseding Indictment, the government filed a Section 851 information regarding the Superseding Indictment, which it had to do to maintain the status quo.

Finally, deviation by the prosecution from the Holder Memo is not a basis for dismissing a second offender information. The Holder Memo itself states that the "policy set forth herein is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding." Holder Memo at 2 n.2. Moreover, as discussed at pages 15 to 17 of the Government's Omnibus Opposition to Defendant's Pretrial Motions (ECF No. 109), there was more than sufficient reason to file the Section 851 informations in this case.

### III. MOTION FOR DETERMINATION THAT 21 U.S.C. § 841(a)(1) DOES NOT QUALIFY AS A CONTROLLED SUBSTANCE OFFENSE (ECF No. 102)

The defendant "moves [for] the court to compel the [g]overnment to [i]ssue a mandate that 21 U.S.C. § 841(a)(1)

-6-

does not qualify as a [f]ederal [s]cheduled [c]ontrolled [s]ubstance offense because the statutory text does not 'involve' [any] of the listed [f]ederal [s]cheduled [c]ontrolled [s]ubstances as defined within § 802 in light of <u>Mellouli v[.] Lynch</u>, 575 U.S. 798 (2015)." Def's. Mot. (ECF No. 102) at 1.

"Title 21 U.S.C. § 841(a)(1) makes it 'unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]'" <u>United States v. Gonzalez</u>, 420 F.3d 111, 120 (2d Cir. 2005) (internal citations omitted). Controlling precedent makes it clear that § 841(a) and § 841(b) "together define[]" the elements of federal controlled substance offenses. <u>See</u> <u>Terry v. United States</u>, 141 S.Ct. 1858, 1862 ("§§ 841(a) and (b) together defined [the] offenses relevant here."); <u>Gonzalez</u> 420 F.3d at 120 ("Any person who engages in conduct proscribed by § 841(a)(1) . . . is subject to penalties detailed in the lettered subsections of § 841(b)(1)."). Thus, "21 U.S.C. § 841(b) is an element of the [narcotics] offense" stated in § 841(a)(1). <u>United States v. Cordero</u>, 2022 WL2834606 at *11 (D. Conn 2022), and "[t]he drug quantities specified in 21 U.S.C. § 841[(b)] are elements that must be pleaded and proved to a jury or admitted by a defendant to support any conviction on an aggravated drug offense." <u>Id.</u>

The defendant's reliance on <u>Mellouli v. Lynch</u> is misplaced. <u>Mellouli</u> involved using the categorical approach to analyze whether a Kansas statute is categorically a controlled substance offense under the Immigration and Nationality Act. <u>See</u> <u>Mellouli</u> 575 U.S. at 805-808. Here, Rosado is being charged directly with a federal criminal offense under 21 U.S.C. § 841(a)(1).

### IV.   MOTIONS TO BAR PROSECUTION BASED ON CHALLENGES TO CONSTITUTIONALITY OF § 841(b)(ECF Nos. 86, 87, 103)

In ECF No. 86, Rosado argues that "21 U.S.C. § 841(b) whole entire 'Penalty Provisions' is unconstitutional and unenforceable" because "[a]ny facts that increase the prescribed range of penalties to which a criminal defendant is exposed must be found by a jury beyond a reasonable doubt." ECF No. 86 at 1-2.  Similarly, in ECF No. 87, Rosado argues that "[a]ny facts that increase the prescribed range of penalties to which a criminal defendant is exposed must be found by a jury beyond a reasonable doubt." ECF No. 87 at 2. The defendant also argues that "the due process clause requires the government to prove any component of the prohibited transaction that give[s] rise to both a special stigma and a special stigma and a special punishment beyond reasonable doubt." <u>Id.</u> at 14. Thus, the defendant's motions are based on the erroneous premise that the quantities set forth in § 841(b) can be proved at trial by a preponderance of the evidence. However, "[t]he drug quantities

specified in 21 U.S.C. § 841 are elements that must be pleaded and proved to a jury or admitted by a defendant to support any conviction on an aggravated drug offense." Gonzalez 420 F.3d at 133-34. Therefore, there is no dispute that these enhancements must be proven beyond a reasonable doubt.

In ECF No. 103, the defendant argues that "the penalty provisions of [T]itle 21 U.S.C. § 841(b) constitutes [] an [i]mplied [r]epeal of the substantive offense created under § 841(a)(1) because the combination of both statutes operating together creates an irreconcilable conflict." ECF No. 103 at 5. The defendant concedes that this is a novel argument. Def.'s Rep. Gov.'s Omnibus Opp. at 9. However, "absent 'a clearly expressed congressional intention,' 'repeals by implication are not favored.'" Branch v. Smith, 538 U.S. 254, 273 (2003) (internal citations omitted). Both § 841(a)(1) and § 841(b)(1)(B) were enacted as part of the Controlled Substances Act of 1970, Pub. L. No. 91-513. While the precise wording of § 841(b)(1)(B) has changed over the years, the court is not aware of any amendment that evinces a "clearly established congressional intent[]," Branch, 538 U.S. at 273, to repeal the statute altogether, and the defendant does not point to anything that suggests such a congressional intent.

## V.   MOTION FOR SENTENCING MODIFICATION (ECF No. 88)

The defendant has filed a "Motion for Sentencing Modification to a Non-Mandatory Minimum Created under 21 U.S.C. § 841(b)(1)(c) in light of the Eric Holder [p]olicy [r]egime." Def.'s Mot. Sentencing Mod. (ECF No.88) at 1. He requests "the [d]istrict [c]ourt to grant the charged [d]efendant a sentencing modification and [p]lea [a]greement in light of the Eric Holder [p]olicy [r]egime." Id. at 2. The defendant also "asserts that [T]itle 18 U.S.C. [§] 3582(a) specifies the factors to be considered when a court orders imprisonment." Id. at 5.

> That section provides that the court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in 18 U.S.C. [§] 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Id.

"The Government understands this motion to request a sentence to a non-mandatory minimum term of imprisonment under 21 U.S.C. § 841(b)(1)(C), rather than the mandatory minimum 15-year term of imprisonment if he is convicted on the charged offenses." Gov.'s Omnibus Opp. at 22. That is the court's understanding as well.

The defendant contends that the court has "inherent power" to consider this argument at this time. Def.'s Rep. Gov.'s

Omnibus Opp. at 13. However, as the government states, this
motion is premature because this is an argument for sentencing,
and it would only be appropriate if the defendant is actually
convicted of an offense that carries with it a mandatory minimum
sentence. The court notes that if the defendant is convicted of
an offense that carries with it a mandatory minimum sentence,
while there are certain circumstances specified by statute where
a sentence below the mandatory minimum may be imposed, the
Holder Memo is not a basis for imposing a term of imprisonment
below a mandatory minimum sentence.

**VI.   MOTION TO SUPPRESS (ECF No. 94)**

The defendant "moves the court to [s]uppress [a]ny/[a]ll
evidence that was searched and seized [i]ncident to his
[u]nlawful [a]rrest lacking probable cause." Def.'s Mot.
Suppress (ECF No. 94) at 1. The defendant "asserts that there
was no criminal activity conducted in the presence of the
government arresting officers during the time frame of his
arrest that would establish probable cause to place the charged
defendant under arrest on the day of May 16, 2021." Id. at 4.
The defendant also argues that the lawfulness of his arrest is
governed by Connecticut law, and that because his arrest was
unlawful, all evidence seized as a result of his arrest "is
fruit of the poisonous tree and may not be used as proof against
the victim of the search." Id. at 10(original in all caps).

There is no dispute as to the facts that must be considered in determining whether there was probable cause to arrest the defendant. Rosado's "Statement of Case," pages two to four of the motion to suppress, is consistent with the government's version of events. Rather, the defendant contends that based on these facts, the FBI agents had no probable cause to arrest him on May 16, 2021. However, there was ample probable cause to arrest Rosado that day.

On April 13, 2021, law enforcement agents used a cooperating witness to arrange a controlled buy of narcotics from the defendant. With respect to the events on May 16, 2021, the following summary by the government of those events is accurate:

> But as described above, agents knew through Rosado's communications with the [cooperating witness], that on May 14, 2021, Rosado told the [cooperating witness] that he has access to a car with a hidden compartment that he could use to deliver narcotics to the [cooperating witness]; that Rosado and the [cooperating witness] agreed to meet in Bridgeport on May 16, 2021, for a narcotics transaction; and that on May 16, Rosado confirmed with the [cooperating witness] that he would be bringing several kilograms of the pink substance and a kilogram of cocaine. That evening, agents observed, via physical surveillance and recording devices, as Rosado arrived and parked next to the [cooperating witness] at approximately 8:27 p.m., entered the [cooperating witness'] car with a bag, and showed the contents of the bag to the [cooperating witness], who then uttered an agreed-upon code word to indicate to case agents that Rosado had delivered the narcotics.

Complaint Aff. ¶¶ 11-12, 14.

The defendant contends there was not probable cause because law enforcement agents "never observed Rosado []commit the crime of possession of narcotics with the intent to distribute of "[possession of [a] [k]ilogram of fentanyl/[h]eroin and [c]ocaine on the day of Rosado's arrest on the exact date of May 16, 20[21]." Def.'s Mot. Suppress at 5. However, probable cause exists "when at the time of the arrest, the officer has knowledge of facts and circumstances which are 'sufficient to warrant a prudent man in believing that the [suspect] has committed or was committing an offense.'" United States v. Gaviria, 805 F.2d 1108, 1115 (2d Cir. 1986) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964) (alteration in original). "[I]t is not necessary to make a 'prima facie showing of criminal activity' or to demonstrate that it is more probable than not that a crime has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (1987) (quoting United States v. Travisano, 724 F.2d 341,346 (2d Cir. 1983). "Because the [probable cause] standard is fluid and contextual, a court must examine the totality of the circumstances of a given arrest." United States v. Delossantos, 536 F.3d 155, 159 (2d Cir. 2008) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "These circumstances must be considered from the perspective of a reasonable police officer in light of his training and experience." Id. In United States v. Perez, 1997 WL821768, a

case in which a defendant was charged with a narcotics offense, the court held that "a law enforcement officer does not actually have to observe narcotics to possess probable cause for a drug arrest." <u>Perez</u> at *2 (citing <u>Cruz</u>, 834 F.2d at 51).

The defendant argues, erroneously, that Connecticut law should have governed his arrest, "but where only federal officials are involved, federal law is controlling." <u>United States v. Bradley</u>, 455 F.2d 1181, 1185 n.8 (1st Cir. 1972). Moreover, as explained by the government at pages 27-28 of its Omnibus Opposition, "even if Connecticut law somehow did apply here, Rosado's arrest still would have been valid." Gov.'s Omnibus Opp. at 27.

Finally, because the defendant's arrest was lawful, suppression of evidence seized pursuant to that arrest is not warranted.

## VII. MOTION TO DISMISS DUE TO PROSECUTORIAL VINDICTIVENESS (ECF No. 101)

"[A] decision to prosecute violates due process when the prosecution is brought in retaliation for the defendant's exercise of his legal rights." <u>United States v. White</u>, 972 F.2d 16, 19 (2d Cir. 1992) (internal citations omitted). The defendant contends that the Superseding Indictment here was brought in retaliation for his exercise of his constitutional rights in that, "no later than a month after filing [his]

-14-

pro[]se motion[,] the government retaliate[d] against [him] by
filing a Superseding Indictment on June 14, 2022 based upon
solid grounds of [him] exercising [his] constitutional rights."
Def.'s Mot. Dismiss Indictment (ECF No. 101) at 2. "The
defendant argues that the government actions resulted in
vindictive prosecution when the defendant invoked his
constitutional, procedural, and statutory right to self-
representation in his defense." Id. "Immediately after [he]
exercised these rights, the government filed a superseding
indictment with more serious charges, which [he] can possibly be
convicted [of] consecutively (harsher penalties)." Id. at 4.
"Moreover, the government has not identified any newly
discovered evidence that might justify its charging decisions."
Id. at 5.

There are two methods of proving motive with respect to
prosecutorial vindictiveness: (1) "where there is direct
evidence of actual vindictiveness" and (2) where "a rebuttable
presumption of a vindictive motive may arise under certain
circumstances." White, 972 F.2d at 19.

As to the first method, "[a] finding of actual
vindictiveness requires a showing that a prosecutor's charging
decision [is] a direct and unjustifiable penalty, that resulted
solely from the defendant's exercise of a protected legal
right." United States v. Stewart, 590 F.3d 93, 123 (2d Cir.

-15-

2009) (internal citations and quotations omitted). The fact that
"the government possessed the same information when preparing
the original and superseding indictments," or "that the maximum
punishment [the defendant] face[s] if convicted under the
superseding indictment [is] greater than that he [would have]
faced if convicted under the original indictment," standing
alone is not enough. Id.

In any event, the defendant's contention that, at the time
the Superseding Indictment was returned, the government
possessed the same evidence it had access to at the time of the
Indictment lacks merit. It is undisputed that the government did
not have the results of the formal laboratory analysis of the
narcotics seized on May 16, 2021 at the time of the Indictment.
This is reflected by the fact that the defendant was charged in
Count Two of the Indictment with an offense involving heroin as
opposed to fentanyl.

Also, the defendant filed his motion to proceed pro se on
May 26, 2022, and it was not granted until July 14, 2022. The
defendant does not dispute that the government stated its
intention to seek a Superseding Indictment charging offenses of
§ 841(b)(1)(A) on the record during the Frye hearing on May 3,
2022. Moreover, the government represents that it first
expressed its intention to do so immediately following the
defendant's arraignment on June 9, 2021 by informing Rosado's

-16-

first attorney, and then again expressed its intention to do so by informing Rosado's second attorney in September 2021.

The government further represents that it "conducted a reverse proffer with Rosado and his standby counsel on August 1, 2022" and "gave Rosado the option to plead guilty to the § 841(b)(1)(A) offense in the superseding indictment without the Government's filing of a § 851 information, but he refused that offer." Gov.'s Omnibus Opp. at 34. In any event, when the government filed the § 851 information with respect to the Superseding Indictment, it merely duplicated the step it had taken with respect to the Indictment.

The second method of proving a vindictive motive is a presumption of vindictiveness. "However, such a presumption of prosecutorial vindictiveness does not exist in a pre-trial setting." United States v. Hinton, 703 F.2d 672, 678 (2d Cir. 1983) (quoting United States v. Goodwin, 457 U.S. 368, 381 (1982)). "[T]he Supreme Court has applied the presumption of prosecutorial vindictiveness only to situations in which a prosecutor lodges more severe charges following a defendant's post-conviction exercise of his right to appeal." Lane v. Lord, 815 F.2d 876, 878 (2d Cir. 1987) (citing Thigpen v. Roberts, 468 U.S. 27, 30 (1984)). Bordenkircher v. Hayes, 434 U.S. 357 (1978), is directly on point. In Bordenkircher, the Supreme Court distinguished the "punish[ment] [of] a person because he

has done what the law plainly allows him to do," e.g. appeal a

conviction, from "plea bargaining [where] there is no such

element of punishment or retaliation[,] so long as the accused

is free to accept or reject the prosecution's offer."

Bordenkircher, 434 U.S. at 363 (internal citations omitted).

**VIII.        CONCLUSION**

For the reasons set forth above, each of the defendant's

pretrial motions, ECF Nos. 85, 86, 87, 88, 94, 101, 102, and 103

is hereby DENIED.

It is so ordered.


Dated this 17th day of January 2023, at Hartford,

Connecticut.


                                        /s/AWT
                              ─────────────────────────────
                                   Alvin W. Thompson
                              United States District Judge